UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TYRONE L. PILLARS,

                Petitioner,                Case Number: 2:10-CV-13105

v.                                     HONORABLE NANCY G. EDMUNDS

CARMEN PALMER,

                Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS
CORPUS AND GRANTING CERTIFICATE OF APPEALABILITY**

Petitioner Tyrone Pillars has filed a petition for a writ of habeas corpus pursuant to

28 U.S.C. § 2254.  Petitioner is currently incarcerated at the Michigan Reformatory in

Ionia, Michigan.  He challenges his conviction for possession of 50-449 grams of cocaine

on the ground that he received ineffective assistance of trial counsel.  Petitioner has not

shown that the state court's holding denying his ineffective assistance of counsel claim

was contrary to or an unreasonable application of *Strickland v. Washington*, 466 U.S. 668

(1984).  Habeas relief is denied.

**I.     Facts**

Petitioner's conviction arises from a traffic stop in Detroit on August 25, 2006.  A

search of the vehicle incident to Petitioner's arrest yielded approximately 250 grams of

cocaine and $ 1,083.00.

Detroit Police Officer Bradley Clark testified that at approximately 6:15 p.m., he

was driving a marked patrol car near the intersection of McNichols and Telegraph Roads

with his partner, police officer John Burris, when he observed a Ford Bronco with a

cracked windshield.  He pulled his vehicle behind the Ford Bronco and activated his

overhead lights.  The driver of the Bronco, later identified as Petitioner, pulled his vehicle

into a gas station parking lot.  At no time before or after the Bronco pulled over did

Officer Clark see anyone exit the vehicle.  He testified that there was only one occupant

of the vehicle.  Officer Clark exited his vehicle and approached the Bronco on the driver's

side.  Officer Clark testified that, as he approached the vehicle, he could not see

Petitioner's hands and it appeared as if Petitioner was bent over in a manner consistent

with placing something under his seat.  Officer Clark yelled to Petitioner, "Let me see

your hands."  Very shortly after Officer Clark said that, Petitioner raised his hands.

Once he could see Petitioner's hands, Officer Clark approached the vehicle.  He

asked Petitioner for a driver's licence, proof of insurance and registration.  Petitioner

could not provide any of those documents.  Officer Clark directed Petitioner to exit the

vehicle and advised him that he would be arrested for not having a driver's license.

Petitioner was handcuffed and placed in the back of the patrol car.

Officer Clark advised Officer Burris that it looked as if Petitioner placed

something under the driver's seat of the vehicle.  He observed Officer Burris recover a

large amount of what appeared to be crack cocaine packaged inside of four sandwich

bags.  He also noted that Officer Burris recovered a large amount of money from the car,

although he did not know from what portion of the car the money was recovered.

Police Officer Burris testified that he and Officer Clark performed a traffic stop on the Ford Bronco because it had a cracked windshield. He observed one person, later identified as Petitioner, to be the only occupant of the vehicle. He did not see anyone, other than Petitioner, exit the vehicle either before or after it stopped. Officer Burris approached the vehicle from the passenger side. He became suspicious because the driver of the vehicle was "squirming" and Officer Burris could not see the driver's arms or hands. Officer Burris testified that the driver appeared to be attempting to kick something under the seat. After Petitioner was placed under arrest, Officer Burris looked in the area by the driver's seat. He found four small plastic bags contained inside a larger plastic bags. The plastic bags contained a substance Office Burris believed to be crack cocaine. Officer Burris testified that in the center console of the vehicle he discovered a large sum of cash totaling $1,083.00.

The prosecution's final witness, Michael Dekun, testified that he determined that the license plate that had been on the Bronco was associated with a 1996 Chevrolet station wagon which was registered to Arrlishia Pillars, Petitioner's sister.

Petitioner testified in his own defense. He was the sole defense witness. Petitioner testified that, on August 25, 2006, he was riding in a Ford Bronco with two other individuals: Aaron Autry, who was driving, and a woman named Beth, who was riding in the backseat. Petitioner was seated in the front passenger seat. Autry was giving Petitioner a ride back to his house. Petitioner testified that, at some point, a police car caused the car to be pulled over in a gas station parking lot near Six Mile Road and

Telegraph.  After Autry pulled the vehicle to a stop, Autry jumped out of the drivers side

of the truck and ran down Telegraph Road.  According to Petitioner, police did not chase

Autry.  Petitioner testified that police handcuffed him and placed him in the back of the

patrol car.  Police pulled Beth out of the vehicle, handcuffed her, and sat her outside the

gas station.  They eventually let her go.

Petitioner denied being seated in the driver's seat of the Bronco at any time or

trying to conceal cocaine in the vehicle.  He also denied knowledge of the over $1,000

reportedly found in the vehicle.  He claimed to have had $140.00 in his possession along

with a cell phone.  He testified that he took pictures of the officers with his cell phone

while they were driving beside the Bronco because the officers were trying to have a

conversation with him while driving down the road.  He also took pictures while he was

being placed under arrest.  After they placed him under arrest, however, Officer Burris

took his telephone.

Petitioner admitted that he owned the Bronco in which he was arrested.  But,

claimed that, for the week and a half preceding his arrest, he had loaned the Bronco to

Autry.  Petitioner testified that he told his first attorney about Autry and that they were

unable to find him.  Petitioner had been friends with Autry for fourteen years.  He gave a

private investigator the approximate address of the house where he last knew Autry's

family to live, but the investigator did not find him there.  Petitioner did not have a phone

number for Autry or any other means of getting in touch with him.

II.     **Procedural History**

4

Petitioner was charged with possession with intent to distribute 50-449 grams of cocaine in violation of Mich. Comp. Laws § 333.7401(2)(a)(iii). A Wayne County Circuit Court jury convicted him of the lesser offense of possession of 50-449 grams of cocaine in violation of Mich. Comp. Laws § 333.7403(2)(a)(iii). On September 10, 2007, Petitioner was sentenced to 20 to 60 years in prison.

Petitioner filed an appeal of right in the Michigan Court of Appeals. He raised these claims:

I.    Denial of motion to suppress evidence constituted reversible error.

II.   Defendant-appellant was denied the effective assistance of trial counsel.

III.  Sentence imposed violated constitutional guarantees against cruel and/or unusual punishment.

The Michigan Court of Appeals affirmed Petitioner's conviction and sentence. *People v. Pillars*, No. 280812, 2009 WL 609400 (Mich. Ct. App. March 10, 2009).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Pillars*, 484 Mich. 871 (2009).

Petitioner then filed the pending habeas petition. He raises this claim:

Where trial counsel failed to adequately communicate with and visit Mr. Pillars, and where trial counsel failed to introduce any evidence of the prior civil case, Mr. Pillars was denied effective assistance of trial counsel in violation of his constitutional rights.

## III.  Standard

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996

5

(AEDPA), Pub.L. No. 104–132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel.  *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir.1998).  Under that review standard, mere error by the state court does not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable."  *Wiggins*, 539 U.S. at 520–21 (*quoting Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)).  Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.");  *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir.1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to"

6

clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases....
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405–06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court has explained that an unreasonable application of federal law is different from an incorrect application of federal law. Under that language, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. The Supreme Court has continued to emphasize the limited nature of this review. In its recent unanimous decision in *Harrington v. Richter*, 562 U.S. —, 131 S.Ct. 770 (2011), the Court reiterated that the AEDPA requires federal habeas courts to review state court decisions with "deference and latitude," and "[a] state court's determination that a claim lacks merit precludes habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 785–86 (*quoting Yarborough v.*

7

*Alvarado*, 541 U.S. 652, 664 (2004)).

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than de novo review.  The AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, —, 130 S.Ct. 1855, 1862 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal quotation marks and citations omitted)); *see also Bray v. Andrews*, 640 F.3d 731, 737–39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493–94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594–95 (6th Cir.2008); *Davis v. Coyle*, 475 F.3d 761, 766–67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, — U.S. —, 131 S.Ct. 1388, 1398, (2011).

## IV.    Request for Evidentiary Hearing

Petitioner requests an evidentiary hearing.  When a petitioner seeks habeas relief on a claim that has been "adjudicated on the merits in state court proceedings," 28 U.S.C.

§ 2254(d)(1), federal court review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, — U.S. —, 131 S. Ct. 1388, 1398 (2011). If a petitioner raises a claim not adjudicated on the merits by the state courts, the federal court has discretion to consider new evidence under 28 U.S.C. § 2254(e)(2). *Id.* at 1401. Section 2254(e)(2) bars a federal court from holding an evidentiary hearing unless the petitioner satisfies certain statutory requirements.

In this case, the Michigan Court of Appeals addressed the merits of Petitioner's ineffective assistance of counsel claim. Under *Cullen*, then the Court's review is limited to the record that was before the state court. This is so even though the Michigan Court of Appeals referred specifically only to Petitioner's claim that counsel was ineffective in failing to introduce evidence of the prior civil suit and did not specifically and separately address Petitioner's claim that counsel failed to adequately communicate with him. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at —, 121 S. Ct. at 784-85. This presumption is justified because "it is not the uniform practice of busy state courts to discuss separately every single claim to which a defendant makes even a passing reference." *Johnson v. Williams*, — U.S. —, 133 S. Ct. 1088, 1094 (2013). Thus, when a state court rejects a federal claim without expressly addressing that claim, there is a rebuttable presumption that the federal claim was adjudicated on the merits. *Id.*

In *Williams*, the Supreme Court considered whether the California Court of Appeal overlooked a habeas petitioner's claim that the dismissal of a juror during deliberations violated her Sixth Amendment right to a jury trial.  On appeal to the California Court of Appeal, the petitioner argued that the juror's dismissal violated both the Sixth Amendment and the California Penal Code § 1089.  The California Court of Appeal's opinion affirming the petitioner's conviction discussed the propriety of dismissing the juror, but did not expressly acknowledge the issue as one implicating the Sixth Amendment.  *Williams*, 133 S. Ct. at 1093.  On habeas review, the Ninth Circuit Court of Appeals held that it was obvious that the California Court of Appeal had overlooked or disregarded the Sixth Amendment claim.  *Id.*  The Supreme Court held that, considering several relevant facts, the presumption that the state court addressed the merits of the Sixth Amendment claim had not been rebutted.  The Supreme Court placed the most emphasis on the fact that the California Court of Appeal cited a California Supreme Court case that included a lengthy discussion of three United States Court of Appeals cases addressing the Sixth Amendment right to a jury trial.  *Id.* at 1098.  The Supreme Court also considered that the alleged violation of the California Penal Code and the petitioner's rights under the Sixth Amendment were so closely related that it was "difficult to imagine" the California Court of Appeal could consider one without the other.  Finally, the Supreme Court considered that the petitioner had treated her state and federal claims as interchangeable throughout her state proceedings.  The petitioner did not petition for rehearing after the California Court of Appeal rendered its decision on the ground that the

state court failed to adjudicate her Sixth Amendment claim on the merits. *Id*. at 1099.

Considering these facts, the Supreme Court concluded that the petitioner failed to rebut

the presumption that the state court adjudicated her Sixth Amendment claim on the

merits. *Id.*

After applying the presumption of a merits adjudication to the facts of this case,

the Court concludes that the Michigan Court of Appeals did not overlook Petitioner's

claim that counsel failed to adequately communicate with him. One of the cases cited by

the Michigan Court of Appeals, *People v. Odom*, 276 Mich. App. 407 (2007), specifically

addresses a claim that defense counsel was ineffective because counsel did not

communicate sufficiently with his client. In addition, Petitioner did not seek rehearing

after the Michigan Court of Appeals issued its decision on the ground that the state court

failed to adjudicate a portion of his ineffective-assistance-of-counsel claim. This Court

concludes that Petitioner has not overcome the presumption that both portions of his

ineffective assistance of counsel claim were adjudicated on the merits. Thus, under

*Pinholster*, the Court's review is confined to the record before the state courts and the

Court denies Petitioner's request for an evidentiary hearing. *Id.* at 1398.

## V.    Ineffective Assistance of Counsel Claims

Petitioner raises two ineffective assistance of counsel claims. First, that his

counsel, Robert Slameka, was ineffective for failing to introduce testimony related to

Petitioner's prior civil suit against Officers Clark and Burris. Second, he claims that

Slameka was ineffective in failing to consult with him prior to trial.

### A.      Legal Standard

To establish that he received ineffective assistance of counsel, a petitioner must

show, first, that counsel's performance was deficient and, second, that counsel's deficient

performance prejudiced the petitioner.  *Strickland v. Washington*, 466 U.S. 668, 687

(1984).  A petitioner may show that counsel's performance was deficient by establishing

that counsel's performance was "outside the wide range of professionally competent

assistance."  *Id.* at 689.  This "requires a showing that counsel made errors so serious that

counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.* at

687.  "[A] court must indulge a strong presumption that counsel's conduct falls within the

wide range of reasonable professional assistance; that is, the defendant must overcome

the presumption that, under the circumstances, the challenged action might be considered

sound trial strategy."  *Id.* at 689, 104 S.Ct. 2052.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different.  A reasonable probability is a probability sufficient to

undermine confidence in the outcome."  *Id.* at 694.  A court's review of counsel's

performance must be "highly deferential."  *Id.* at 689.

Habeas relief may be granted only if the state-court decision unreasonably applied

the standard for evaluating ineffective-assistance-of-counsel claims established by

*Strickland*.  *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009).  "The question is not

whether a federal court believes the state court's determination under the *Strickland*

standard was incorrect but whether that determination was unreasonable – a substantially

higher threshold." *Id.* at 123 (internal quotation omitted).

### B.     Prior Civil Case Filed Against Police Officers

Petitioner argues that his attorney was ineffective in failing to introduce evidence

that the two arresting officers in this case were the defendants in a civil action filed by

Petitioner.  The civil action arose from a previous arrest of Petitioner by Officers Clark

and Burris.  On April 7, 2007, Clark and Burris executed a traffic stop of a vehicle driven

by Petitioner in Detroit.  The officers allegedly found on Petitioner a bag containing

cocaine.  Petitioner was placed under arrest and charged with possession of less than 25

grams of cocaine.  On June 11, 2004, the criminal charge was dismissed without prejudice

on motion of the assistant prosecuting attorney.  In July 2004, Petitioner sued Officers

Clark and Burris in Wayne County Circuit Court, alleging that they planted the cocaine

on him, disabled the patrol car's video camera, and falsified police reports.  The parties

entered into a settlement and the case was dismissed on December 12, 2005.  The

settlement amount was $37,500.

> The Michigan Court of Appeals denied this claim holding:
>
> The decision whether to admit evidence regarding the dismissed 2004 case
> involving defendant and the police officers was a matter of trial strategy.
> *People v. Horn*, 279 Mich.App. 31, 39, 755 N.W.2d 212 (2008).  This Court
> will not substitute its judgment for that of trial counsel on such matters.  *Id.*;
> *People v. Odom*, 276 Mich. App. 407, 415, 740 N.W.2d 557 (2007).
> Defendant's ineffective assistance of counsel claim must therefore fail.
> *People v. Unger*, 278 Mich.App. 210, 242-243, 749 N.W.2d 272 (2008).

*Pillars*, 2009 WL 609400 at * 1.

Even though the state court's decision lacked any meaningful analysis, this Court

must, nevertheless, apply § 2254(d)'s deferential standard of review. *Richter*, — U.S. —,

131 S. Ct. at 784 ("Where a state court's decision is unaccompanied by an explanation,

the habeas petitioner's burden still must be met by showing there was no reasonable basis

for the state court to deny relief.").

At sentencing, Petitioner raised counsel's failure to present evidence regarding the

prior civil suit:

> Petitioner:   I feel that I didn't receive proper representation from my lawyer Robert Slameka. . . .
>
> The reason why I wanted to take this case to trial is because I am innocent, and I've sued the arresting officers in my case also back in 2004. I sent Slameka my lawsuit statement clearly naming the two arresting officers. I told Mr. Slameka how I wanted to proceed with my case in various unanswered letters.
>
> When the officers were on the stand testifying at the trial, I asked Mr. Slameka to ask questions about the prior altercation I had with these officers. He said he would not ask about any of that. If I take the stand he would ask me, because all the police were going to do was deny it. When I got on the stand, he didn't ask me any of the questions I wanted him to ask me. When I tried to say something, I was asked to step down.
>
> The lawsuit I won based on the prior misconduct of these officers was the only leg my defense had to stand on. Therefore, I feel attorney Slameka sabotaged my case. . . .
>
> Slameka:   As you might recall, Judge, he's got his foot on three hundred grams of cocaine, okay? He said there are two other people in the car. Officers previously on two separate occasions denied it. To bring out the fact that he previously sued them, not because of misconduct, because a tape was missing, Mr. Simone, then, would have a field day cross-examining as to

14

> his prior narcotic activity.
>
> If you recall, somebody, whose name I won't mention, spoke to the jury.  And what did the jury say?  Had they known of his prior narcotic activity, they would have been out in a second with a more serious offense.  It's a matter of trial strategy.
>
> I don't want to bring out in a case, where a guy's sitting on three hundred grams of cocaine and he's previously been arrested for a similar offense.  And that's what would have to be brought out. . . .

Tr., 9/10/2007 at 4-6.

Slameka's explanation for deciding not to raise the civil claim was reasonable.  It may not have been the *best* strategy, but the Constitution does not guarantee an attorney who always makes the best decisions.  Petitioner was entitled to competent representation, not a "perfect defense."  *Crehore v. U.S.*, 127 F. App'x 792, 796 (6th Cir. 2005).  The evidence implicating Petitioner relied on the testimony of Officers Burris and Clark.  Petitioner's defense hinged on his own credibility weighed against the officers' credibility.  Introduction of this evidence would have explained a possible motive for the officers to lie and/or plant evidence.  At the same time, introduction of the civil-case evidence would not have been without complication.

Admission of this testimony would have opened the door to testimony about Petitioner's prior criminal history and previous contact with law enforcement.  It also would have allowed the prosecution to elicit testimony from Petitioner similar to that adduced at a pre-trial evidentiary hearing, following which the trial court held that Petitioner's testimony was "untruthful" and "defies logic."  Tr., 11/29/06 at 46.  The trial

court found incredible Petitioner's testimony that, during the preceding two years, he had

approximately twenty run-ins with Officers Burris and Clark because the officers were

targeting him in some way.  Petitioner also offered testimony at the pre-trial hearing about

the events surrounding his arrest in this case.  Petitioner testified that officers handcuffed

him and placed him in the back of the patrol car.  Officer Burris then retrieved a pair of

pliers from the patrol car and began trying to open the hood of the truck.  Eventually,

Officer Burris opened the hood and retrieved a potato chip bag from under the hood of the

vehicle.  Petitioner testified that he used his cell phone to take pictures of Officer Burris

attempting to open the hood of the vehicle.  When asked how, if he was handcuffed with

his hands behind his back, he was able to access his cell phone, Petitioner answered that

he is double jointed.

　　　　While another attorney may have proceeded differently and a different approach

may even have been preferable, "[t]here are . . . 'countless ways to provide effective

assistance in any given case.  Even the best criminal defense attorneys would not defend a

particular client in the same way.'" *Richter*, 131 S. Ct. at 788-89.  Competent counsel

need not be "a flawless strategist or tactician" and "an attorney may not be faulted for a

reasonable miscalculation." *Id.* at 791.  Defense counsel's articulated strategy to omit this

evidence so as not to open the door to exploration of Petitioner's prior police contact and

Petitioner's drug history was not unreasonable.  Moreover, Petitioner's testimony at the

pre-trial hearing, characterized as "untruthful" and "defy[ing] logic", may have

reasonably persuaded a competent attorney to limit Petitioner's testimony.  Defense

counsel's decision not to admit this evidence may have been a miscalculation, but the state court's decision that it did not rise to the level of incompetence is not contrary to or an unreasonable application of *Strickland*. Habeas relief is denied on this claim.

### C. Attorney-Client Communication

In his second ineffective assistance of counsel claim, Petitioner argues that Slameka was ineffective because he failed to communicate with him prior to trial. In his petition, Petitioner argues that Slameka never visited him in jail and only visited him in the bullpen on the days Petitioner was present for a court proceeding, and that these bullpen visits were insufficient to be considered adequate attorney-client communication.

The record before the Court is insufficient to establish with certainty the number of times Slameka met with Petitioner. Petitioner testified at the sentencing hearing that Slameka visited him only once and failed to answer any letters or communicate with Petitioner regarding trial strategy. It is not clear whether the visit to which Petitioner referred occurred at the jail or in the bullpen. Slameka was appointed as Petitioner's attorney after his first attorney's motion to withdraw was granted on December 1, 2006. On that date, Slameka informed the Court that he had received the prior attorney's entire case file. Slameka also requested additional time before trial to review the case file and to speak to his client. During a pretrial hearing on December 15, 2006, Slameka informed the Court that he had discussed a probation violation charge with Petitioner, a plea offer, and the potential sentence Petitioner faced if he proceeded to trial and was found guilty. Petitioner did not dispute, at that time, that Slameka discussed those issues with him.

17

When the civil case was discussed at sentencing, Slameka indicated familiarity with the case and the circumstances surrounding it.

The Michigan Court of Appeals denied this claim without explanation.  The denial is, nevertheless, entitled to AEDPA deference.  *Richter,* 131 S. Ct. at 784.  "[T]he mere fact that counsel spent little time with [a defendant] is not enough under *Strickland*, without evidence of prejudice or other defects."  *Bowling v. Parker*, 344 F.3d 487, 506 (6th Cir. 2003).  In this case, Petitioner has not shown that counsel's consultation with him was insufficient nor has he shown how additional consultation may have altered the outcome of the trial.  *See Lenz v. Washington*, 444 F.3d 295, 303 (4th Cir. 2006) (petitioner could not prevail on his claim that attorneys were ineffective due to infrequent pre-trial visits where he failed to show resulting prejudice); *Anderson v. Calderon*, 232 F.3d 1053, 1086 (9th Cir. 2000) (same).

Petitioner has not established that Slameka failed to consult with him nor has he established that his defense was prejudiced by counsel's alleged failure to consult with him.  This was not a complicated case, requiring extensive preparation or investigation. There were only three prosecution witnesses and one defense witness.  Petitioner has not shown that Slameka's level of communication was inappropriate under the circumstances or that it prejudiced his defense. Therefore, the Court finds that the state court's decision was not contrary to or an unreasonable application of Supreme Court precedent.

## VI.    Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed

unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of

the Rules Governing Section 2254 Proceedings requires that the Court "must issue or

deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the

denial of a constitutional right."  28 U.S.C. §2253(c)(2).  A petitioner must show "that

reasonable jurists could debate whether (or, for that matter, agree that) the petition should

have been resolved in a different manner or that the issues presented were adequate to

deserve encouragement to proceed further."  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)

(citation omitted).

The Court concludes that reasonable jurists could debate its holding as to both of

Petitioner's ineffective assistance of trial counsel claims.  Thus, the Court grants a COA

as to both ineffective assistance of counsel claims.

## VII.   Conclusion

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED** and

the matter is **DISMISSED WITH PREJUDICE.**

A certificate of appealability is **GRANTED**.

**IT IS ORDERED**.

> S/Nancy G. Edmunds
> Nancy G. Edmunds
> United States District Judge

Dated:  July 15, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on July

15, 2013, by electronic and/or ordinary mail.

                                S/Johnetta M. Curry-Williams
                                Case Manager
                                Acting in the Absence of Carol A. Hemeyer